**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| PACT XPP TECHNOLOGIES, AG | § | |
| | § | |
| v. | § | Case No. 2:07-CV-563-RSP |
| | § | |
| XILINX, INC., et al. | § | |

## JURY INSTRUCTIONS

Members of the Jury:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you, the jury, are the judges of the facts. Do not consider any statement that I have made during the trial or make in these instructions as an indication that I have any opinion about the facts of this case.

The attorneys will soon make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist you in understanding the evidence and the parties' contentions.

In determining whether any fact has been proved in this case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them. You may also consider any stipulations received in evidence.

By the Court allowing testimony or other evidence to be introduced over the objection of an attorney, the Court did not indicate any opinion as to the weight or effect of such evidence. As stated before, you are the sole judges of the credibility of all witnesses and the weight and effect of all evidence.

When the Court sustained an objection to a question addressed to a witness, you must disregard the question entirely, and may draw no inference from its wording or speculate about what the witness would have said if he or she had been permitted to answer.

At times during the trial it was necessary for the Court to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We met because often during a trial something comes up that does not involve the jury. You should not speculate on what was said during such discussions.

Certain testimony in this case has been presented to you through depositions. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, the witness's testimony may be presented, under oath, in the form of a deposition. Some time before this trial,

attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. This deposition testimony is entitled to the same consideration as testimony given by a witness from the witness stand. That is to say, you should judge the credibility of and weigh the importance of deposition testimony, to the best of your ability, as if the witness had testified in court.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence, you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts based on the evidence, both direct and circumstantial.

When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – called an "expert witness" – is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

Preponderance of the evidence means evidence that persuades you that a claim is more likely true than not true. In determining whether any fact has been proved by a preponderance of the evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them.

Clear and convincing evidence means evidence that produces in your mind a firm belief or conviction as to the matter at issue. When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the evidence has persuaded you that the claim or defense is highly probable. In determining whether any fact has been proved by clear and convincing evidence, you may, unless otherwise instructed, consider the stipulations, the testimony of all witnesses regardless of who may have called them, and all exhibits received in evidence regardless of who may have produced them. Although proof to an absolute certainty is not required, the clear and convincing evidence standard requires a greater degree of persuasion than is necessary for the preponderance of the evidence standard. If the proof establishes in your mind a firm belief or conviction, then the standard has been met.

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, PACT seeks money damages from Xilinx and Avnet for allegedly infringing the '181 patent and the '106 patent by making, using, selling, and offering for sale products that PACT argues are covered by claims 1, 3, 17, and 30 of the '181 patent and claim 8 of the '106 patent. These are the asserted claims. PACT also argues that Xilinx and Avnet have actively induced infringement of these claims by others. The products that are alleged to infringe are the Virtex-II Pro, Virtex II Pro X, Virtex-4, Virtex-5, and Virtex-6 families of FPGAs.

Xilinx and Avnet deny that they have infringed the asserted claims of the '181 patent and the '106 patent and argue that, in addition, the asserted claims are invalid. Xilinx and Avnet also deny that they have actively induced others to infringe the asserted claims of the '181 patent and the '106 patent.

Your job is to decide whether Xilinx and Avnet have infringed the asserted claims of the '181 patent or the '106 patent and whether any of the asserted claims of the '181 patent or the '106 patent are invalid. If you decide that any claim of the '181 patent or '106 patent has been infringed and is not invalid, you will then need to consider whether PACT had an obligation to notify Xilinx and Avnet of the alleged infringement and decide any money damages to be awarded to PACT to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Each claim is effectively treated as if it were a separate patent, and each claim may cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The law says that it is my role to define the terms of the claims, and it is your role to apply my definitions to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of the claims, and I have provided you my definitions of certain claim terms in your binder. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

I will now explain how a claim defines what it covers.

A claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device satisfies each of these requirements, then it is covered by the claim.

There can be several claims in a patent. Each claim may be narrower or broader than another claim by setting forth more or fewer requirements. The coverage of a patent is assessed claim-by-claim. In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a product meets all of the requirements of a claim, the claim is said to "cover" that product, and that product is said to "fall" within the scope of that claim. In other words, a claim covers a product where each of the claim elements or limitations is present in that product. If a product is missing even one limitation of a claim, the product is not covered by the claim.

The beginning portion, or preamble, of a claim often uses the word "comprising." The word "comprising" as used in the preamble means "including" or "containing." When "comprising" is used in the preamble, a device that includes all the limitations of the claim, as well as additional elements, is covered by the claim.

A claim requirement may describe a certain functionality or capability that the device must possess. In such cases, a device satisfies the requirement if it is reasonably capable of operating in the recited manner.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements these words impose. It is my job to explain to you the meaning of the words in the claims and the requirements these words impose.

As I just instructed you, there are certain specific terms that I have defined and you are to apply the definitions that I provide to you.

By understanding the meaning of the words in a claim and by understanding that the words in a claim set forth the requirements that a product must meet in order to be covered by that claim, you will be able to understand the scope of coverage for each claim. Once you understand what each claim covers, then you are prepared to decide the issues that you will be asked to decide, such as infringement and invalidity.

I will now explain to you the meaning of some of the words of the claims in this case. In doing so, I will explain some of the requirements of the claims. As I have previously instructed you, you must accept my definition of these words in the claims as correct. For any words in the claim for which I have not provided you with a definition, you should apply their common meaning. You should not take my definition of the language of the claims as an indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

I have defined the following claim terms for you:

The term "bundled" means "combined."

The term "bus system" means "a system used to communicate information according to a bus protocol."

The term "cell(s)" means "configurable element(s)."

The term "communication" means "exchange of information."

The term "configurable element(s)" means "a component of a logic unit, which can be set for a special function by a configuration string/word."

The term "configuration string" means "a series of bits of any length that represents a valid setting for the element to be configured, so that an operable unit is obtained."

The term "configuration" means "the function and interconnection of a logic unit, a FPGA cell, logic cell, or a PAE."

The term "configured" means "having set the function and interconnection of a logic unit, a FPGA cell, logic cell, or a PAE."

The term "configuring" means "setting the function and interconnection of a logic unit, a FPGA cell, or a PAE."

The term "DFP" means "data flow processor according to German Patent DE 44 16 881."

The term "DPGA" means "dynamically programmable gate array."

The term "dynamically reconfigurable cells" means "a cell that can be halted and reset with a new configuration, while any remaining cells continue with the same function."

The term "FPGA" means "field programmable gate array."

The term "interface" or "interface unit" means "unit providing permanent implementation of a bus system control for communicating information across a shared boundary."

The term "multi-dimensional programmable cell architecture" means "a pattern of programmable cells disposed such that each cell has connections in at least two dimensions."

The term "primary logic unit" means "unit for configuring and reconfiguring a PAE or logic cell. Embodied by a microcontroller specifically designed for this purpose."

The term "reconfiguring" means "resetting any number of logic units, FPGA cells, logic cells, or PAEs with a new configuration, while any remaining logic units, FPGA cells, logic cells, or PAEs continue with the same function."

The term "state machine" means "logic which can assume miscellaneous states. The transitions between states depend on various input parameters. These machines are used to control complex functions."

The term "state machine for controlling the at least one interface unit" means "permanent, predefined state machine for controlling the interface unit."

I will now instruct you how to decide whether or not Xilinx and Avnet have infringed the '181 patent or the '106 patent. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are two possible ways that a claim may be infringed. The two types of infringement are called direct infringement and active inducement. Active inducement is referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. To prove indirect infringement, PACT must also prove that Xilinx's indirect infringement and Avnet's indirect infringement caused direct infringement.

In this case, PACT has alleged that Xilinx and Avnet directly infringe the '181 patent and the '106 patent. In addition, PACT has alleged that Xilinx and Avnet's customers directly infringe the '181 patent and the '106 patent, and Xilinx and Avnet are liable for actively inducing that direct infringement by its customers.

In order to prove infringement, PACT must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of these types of infringement have been proved.

I will now explain these two types of infringement in more detail.

In order to prove direct infringement, PACT must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Xilinx and Avnet made, used, sold, or offered for sale within the United States a product that meets all of the requirements of a claim. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met. If you find that the accused product includes each element of the claim, then that product directly infringes the claim even if such product contains additional elements that are not recited in the claim. If you find, however, that the accused product is missing even one element of the claim, that product does not directly infringe the claim.

A patent can be directly infringed even if the alleged infringer did not have knowledge of the patent. A patent may also be directly infringed even though the accused infringer believes in good faith that what it is doing is not an infringement of the patent.

You may have heard evidence and argument in this case about Xilinx's own patents relating to certain of its products. However, owning a patent is not a defense to infringement of another patent. A party can infringe someone else's patents, even though it may have patents of its own.

You must determine, separately for each asserted claim, whether or not there is infringement.

PACT alleges that Xilinx and Avnet are liable for infringement by actively inducing their customers to directly infringe the '181 patent and the '106 patent. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Xilinx and Avnet are liable for active inducement of infringement of a claim only if PACT proves by a preponderance of the evidence that:

      (1)      The acts are actually carried out by Xilinx and Avnet's customers and directly infringe that claim;

      (2)      Xilinx and Avnet took action during the time the '181 patent and the '106 patent were in force intending to cause the directly infringing acts by Xilinx and Avnet's customers; and

      (3)      Xilinx and Avnet were aware of the '181 patent and the '106 patent and knew that the acts, if taken, would constitute direct infringement of that patent or Xilinx and Avnet believed there was a high probability that the acts, if taken, would constitute infringement of the '181 patent or the '106 patent but deliberately avoided confirming that belief.

In order to establish active inducement of infringement, it is not sufficient, by itself, that Xilinx and Avnet's customers directly infringe the claim. Nor is it sufficient, by itself, that Xilinx and Avnet were aware of the acts by their customers that allegedly constitute the direct infringement. Rather, you must find that Xilinx and Avnet specifically intended their customers to infringe the '181 patent and the '106 patent or that Xilinx and Avnet believed there was a high probability that its customers would infringe, but remained willfully blind to the infringing nature of its customers' acts.

In this case, PACT argues both that Xilinx infringed and, further, that Xilinx infringed willfully. If you have decided that Xilinx has infringed, you must go on and address the additional issue of whether or not this infringement was willful. Willfulness requires you to determine by clear and convincing evidence that Xilinx acted recklessly. To prove that Xilinx acted recklessly, PACT must prove two things by clear and convincing evidence: The first part of the test is objective: PACT must persuade you that Xilinx acted despite a high likelihood that Xilinx's actions infringed a valid and enforceable patent. In making this determination, you may not consider Xilinx's state of mind. Legitimate or credible defenses to infringement, even if not ultimately successful, demonstrate a lack of recklessness. Only if you conclude that Xilinx's conduct was reckless do you need to consider the second part of the test. The second part of the test does depend on the state of mind of Xilinx. The patent holder must persuade you that Xilinx actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent. To determine whether Xilinx had this state of mind, consider all facts which may include, but are not limited, to:

      (1)      Whether or not Xilinx acted in accordance with the standards of commerce for its industry;

      (2)      Whether or not Xilinx intentionally copied a product of PACT that is covered by the '181 patent or the '106 patent;

      (3)      Whether or not there is a reasonable basis to believe that Xilinx did not infringe or had a reasonable defense to infringement;

      (4)      Whether or not Xilinx made a good-faith effort to avoid infringing the '181 patent or the '106 patent, for example, whether Xilinx attempted to design around the '181 patent and the '106 patent; and

      (5)      Whether or not Xilinx tried to cover up its infringement.

I will now instruct you on the rules you must follow in deciding whether or not Xilinx and Avnet have proven that claims 1, 3, 17, and 30 of the '181 patent and claim 8 of the '106 patent are invalid. An issued patent is accorded a presumption of validity based on the presumption that the United States Patent Office acted correctly in issuing the patent. Because of this presumption, in order to prove that any claim of a patent is invalid, Xilinx and Avnet must persuade you by clear and convincing evidence, i.e., you must be left with a clear conviction, that the claim is invalid.

Prior art may include items that were publicly known or used, offered for sale, or sold in the United States, or publications or patents that disclose the claimed invention or elements of the claimed invention.

To be prior art, the item or reference must have been publicly used or known in the United States, or published, or patented before the invention at issue was made, or patented or published, or publicly used, sold, or offered for sale in the United States more than one year before the filing date of the patent application at issue.

The parties have agreed that the following is a complete list of the prior art at issue in this case:

      (1)      U.S. Patent No. 6,052,773, issued to DeHon (the "DeHon '773 Patent")

      (2)      Hartenstein, Reiner W., et al., A New FPGA Architecture for Word-Oriented Datapaths, Lecture Notes in Computer Sci., Vol. 849 (1994)

      (3)      PCI Special Interest Group, PCI Local Bus Specification, Production Version, Rev. 2.1 (June 1995)

      (4)      Xilinx, Inc., The Programmable Logic Data Book (1996)

In order for someone to be entitled to a patent, the invention must actually be "new." In general, inventions are new when the identical product has not been made, used, or disclosed before. Anticipation must be determined on a claim-by-claim basis.

For the claim to be invalid because it is not new, Xilinx and Avnet must show by clear and convincing evidence that all of the requirements of that claim were present in a single previous item that was known of, used, or described in a single previous printed publication or patent. We call these things "anticipating prior art." To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed, either expressly or inherently, to a person having ordinary skill in the art in the technology of the invention, so that looking at that one reference, that person could make and use the claimed invention. Anticipating prior art must also disclose the claim requirements arranged and combined in the same way as recited in the claim.

Something is "inherent" in an item of prior art if it is always present in the prior art item or always results from the practice of the prior art item, and if a person ordinarily skilled in the art would understand that to be the case. Inherency may not be established by probabilities or possibilities.

Xilinx and Avnet contend that claims 1, 3, 17, and 30 of the '181 patent and claim 8 of the '106 patent are invalid because the claimed inventions are anticipated. Xilinx and Avnet must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claims are invalid.

Here is a list of ways that Xilinx and Avnet can show that a patent claim was not new or that the patentee lost the right to patent the claims:

(1) An invention is not new if it was known to or used by others in the United States before December 20, 1996. An invention is known when the information about it was reasonably accessible to the public on that date.

(2) An invention is not new if it was already patented or described in a printed publication, anywhere in the world, before December 20, 1996.

(3) PACT has lost its rights if the claimed invention was already patented or described in a printed publication, anywhere in the world, by PACT or anyone else, before October 8, 1996. An invention was patented by another if the other patent describes the same invention claimed by PACT to a person having ordinary skill in the technology.

(4) PACT has lost its rights if the claimed invention was publicly used, sold, or offered for sale in the United States before October 8, 1996. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when it was offered commercially and what was offered was ready to be patented, i.e., a description to one having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice.

(5) An invention is not new if the claimed invention was described in a patent granted on an application for patent by another filed in the United States and the application was filed before December 20, 1996.

Even though an invention may not have been identically disclosed or described in a single prior art reference before it was made by an inventor, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent at the time the invention was made.

Xilinx and Avnet may establish that a patent claim is invalid by showing, by clear and convincing evidence, that the claimed invention, as a whole, would have been obvious to persons having ordinary skill in the art at the time the invention was made in the field of input/output and bus systems for programmable logic devices.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of input/output and bus systems for programmable logic devices that someone would have had at the time the claimed invention was made, the scope and content of the prior art, and any differences between the prior art and the claimed invention.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness. Most, if not all, inventions rely on building blocks of prior art. In considering whether a claimed invention is obvious, you should consider whether at the time of the claimed invention there was a reason that would have prompted a person having ordinary skill in the field of input/output and bus systems for programmable logic devices to combine the known elements in a way the claimed invention does, taking into account such factors as:

(1) Whether the claimed invention was merely the predictable result of using prior art elements according to their known functions;

(2) Whether the claimed invention provides an obvious solution to a known problem in the relevant field;

(3) Whether the prior art teaches or suggests the desirability of combining elements claimed in the invention;

(4) Whether the prior art teaches away from combining elements in the claimed invention;

(5) Whether it would have been obvious to try the combinations of elements, such as when there is a design need or market pressure to solve a problem and there are a finite number of identified, predictable solutions; and

(6) Whether the change resulted more from design incentives or other market forces.

To find it rendered the invention obvious, you must find that the prior art provided a reasonable expectation of success. Obvious to try is not sufficient in unpredictable technologies.

In determining whether the claimed invention was obvious, consider each claim separately. Do not use hindsight, i.e., consider only what was known at the time of the invention without having read PACT's patents. In other words, you should not consider what a person of ordinary skill in the art would know at the present time or after reading PACT's patents.

In making these assessments, you should take into account any objective evidence (sometimes called "secondary considerations") that may have existed at the time of the invention and afterwards that may shed light on the obviousness or not of the claimed invention, such as:

(1) Whether the invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

(2) Whether the invention satisfied a long-felt need;

(3) Whether others had tried and failed to make the invention;

(4) Whether others invented the invention at roughly the same time;

    (5)    Whether others copied the invention;

    (6)    Whether there were changes or related technologies or market needs contemporaneous with the invention;

    (7)    Whether the invention achieved unexpected results;

    (8)    Whether others in the field praised the invention;

    (9)    Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the invention;

    (10)    Whether others sought or obtained rights to the patent from the patent holder; and

    (11)    Whether the inventor proceeded contrary to accepted wisdom in the field.

In deciding what the level of ordinary skill in the field of input/output and bus systems for programmable logic devices is, you should consider all the evidence introduced at trial, including but not limited to:

    (1)    The levels of education and experience of the inventor and other persons actively working in the field;

    (2)    The types of problems encountered in the field;

    (3)    Prior art solutions to those problems;

    (4)    Rapidity with which innovations are made; and

    (5)    The sophistication of the technology.

In considering whether the claimed invention was obvious at the time it was made, you should consider the scope and content of the prior art that I previously identified.

When a party attacking the validity of a patent relies on prior art which was specifically considered by the Examiner during the prosecution of the application leading to the issuance of the patent, that party bears the burden of overcoming the deference due a qualified government agency official presumed to have performed his or her job.

If you find that Xilinx and Avnet infringed any valid claim of the '181 patent or the '106 patent, you must then consider what amount of damages to award to PACT. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue.

The damages you award must be adequate to compensate PACT for the infringement. They are not meant to punish an infringer.

PACT has the burden to establish the amount of its damages by a preponderance of the evidence. While the patent owner is not required to prove damages with mathematical precision, it must

prove them with reasonable certainty. In other words, you should award only those damages that PACT establishes that it more likely than not suffered.

In this case, PACT seeks a reasonable royalty. A reasonable royalty is defined as the money amount PACT and Xilinx and Avnet would have agreed upon as a fee for use of the invention at the time prior to when infringement began. A reasonable royalty may only be applied to infringement that occurred in the United States.

I will give more detailed instructions regarding damages shortly. Note, however, that PACT is entitled to recover no less than a reasonable royalty for the infringement.

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or non-restricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his non-patented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

In determining the amount of damages, you must determine when the damages began. To do so, you may need to consider whether PACT was obligated to notify Xilinx and Avnet of its alleged infringement and, if it was, whether it properly did so.

If a patent owner offers products covered by its patent for sale in the United States or imports such products into the United States, it is required to "mark" those products. "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the patented invention. You must determine whether PACT offered for sale or imported into the United States a product that includes the claimed invention.

An offer for sale occurs when the terms of the offer are sufficiently detailed that a person could make a binding contract simply by accepting the offer. An offer is sufficient if it identifies the product and provides a quantity to be purchased or sold. Advertising a product is not sufficient to constitute an "offer for sale" if it does not indicate that the advertising party is willing to be bound to sell the product for the terms identified in the advertisement without further discussion.

If you find that PACT offered for sale in the United States or imported into the United States a patented product, damages after such time begin when Xilinx and Avnet received actual notice of the alleged infringement. However, any damages that arose before that time are not affected. You must determine the date that Xilinx and Avnet received actual notice of the '181 patent and the '106 patent and the specific product alleged to infringe. Actual notice means that PACT communicated to Xilinx and Avnet a specific charge of infringement of the '181 patent and the '106 patent by a specific accused product or device. The filing of the complaint in this case qualified as actual notice, so the damages period begins no later than the date the complaint was filed on December 12, 2007.

If you find that PACT did not offer for sale in the United States or import into the United States a patented product, damages begin without the requirement for actual notice of the alleged infringement. If you find this, damages should be calculated as of the date you determine that the infringement began.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be controlled by sympathy, prejudice, or public opinion. All parties expect that you will carefully and impartially consider all the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. This is true in patent cases between corporations, partnerships, or individuals. A patent owner is entitled to protect its patent rights under the United States Constitution. This includes bringing suit in a United States District Court for money damages for infringement. The law recognizes no distinction among types of parties. All corporations, partnerships and other organizations stand equal before the law, regardless of size or who owns them, and are to be treated as equals.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

If you want to communicate with me at any time, please give a written message or question to the Court Security Officer, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

You may now retire to the jury room to deliberate.