**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **PACT XPP TECHNOLOGIES, AG** | § | |
| | § | |
| **Plaintiff,** | § | **C.A. No. 2-07cv563 RSP** |
| | § | |
| **vs.** | § | **FILED UNDER SEAL** |
| | § | |
| **XILINX, INC. & AVNET, INC., et al.** | § | |
| | § | |
| **Defendants.** | § | |

## PACT XPP TECHNOLOGIES, AG'S MOTION FOR ATTORNEY'S FEES

## TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................................... 1

II.  ARGUMENT ................................................................................................................. 1

   A.   The Case is Exceptional and Attorney's Fees Are Warranted ...................................... 1

   B.   PACT's Attorney's Fee Request is Reasonable and Conservative ............................... 3

III. CONCLUSION ............................................................................................................. 7

# TABLE OF AUTHORITIES

**Cases**

*ACCO Brands, Inc. v. Am. Power Conversion Corp.*, 2004 WL 5698341 (E.D. Tex. Apr. 27, 2004) ................................................................................................................................ 2

*Jurgens v. CBK, Ltd.*, 80 F.3d 1556 (Fed. Cir. 1996) ................................................................... 2

*Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538 (Fed. Cir. 1990) ......................................... 2

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 2007 WL 2329833 (E.D. Tex. Aug. 13, 2007) ............................................................................................................................... 2, 3

*Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478 (Fed. Cir. 1985) ............................................. 3

*ReedHycalog UK, Ltd. v. Diamond Innovations Inc.*, 2010 WL 3238312 (E.D. Tex. Aug. 12, 2010) ................................................................................................................................. 3

*S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198 (Fed. Cir. 1986) ................... 1, 2

*Takeda Chem. Indus. v. Mylan Labs. Inc.*, 549 F.3d 1381 (Fed. Cir. 2008)................................. 2

# I.  INTRODUCTION

In late 2007, Plaintiff PACT XPP Technologies, AG ("PACT") filed suit against Defendants Xilinx, Inc. and Avnet, Inc. (collectively, "Defendants") for patent infringement arising out of the manufacture, use, and sale of field-programmable gate arrays ("FPGAs") known as the Virtex-II Pro, Virtex-II Pro X, Virtex 4, Virtex 5, and Virtex 6.  In May 2012, a jury trial was held. The jury delivered a verdict that Defendants infringed claims 1, 3, 17, and 30 of U.S. Patent No. 6,119,181 ("the '181 Patent") and claim 8 of U.S. Patent No. 6,338,106 ("the '106 Patent"), and awarded $15,399,900.00 in damages.  The jury also determined that Xilinx's infringement was willful.

As described in further detail in PACT's Motion for Enhanced Damages, filed concurrently herewith and hereby incorporated by reference, Xilinx knew of the importance of PACT's asserted patents years before suit was filed.  But instead of partnering with PACT or paying fair value for the patented technology, Xilinx instead hoped to acquire the patents at a low-ball price if PACT went bankrupt.  As the jury found, Xilinx knew that it was infringing the asserted patents and its defenses presented at trial were not credible.

Pursuant to 35 U.S.C. § 285, PACT respectfully requests that the Court find the case exceptional and award PACT $2,403,874.83 in attorney's fees.  This award reflects just 37.5% of the $6,410,027.00 in total fees incurred in this case.

# II.  ARGUMENT

## A.    The Case is Exceptional and Attorney's Fees Are Warranted

"The award of attorney fees is authorized by 35 U.S.C. § 285 in 'exceptional cases.'" *S.C. Johnson & Son, Inc. v. Carter-Wallace, Inc.*, 781 F.2d 198, 200 (Fed. Cir. 1986).  "An express finding of willful infringement is a sufficient basis for classifying a case as 'exceptional,'

and indeed, when a trial court denies attorney fees in spite of a finding of willful infringement, the court must explain why the case is *not* 'exceptional' within the meaning of the statute." *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990) (emphasis in original). "The decision to award attorney fees is within the discretion of the trial judge." *Takeda Chem. Indus. v. Mylan Labs. Inc.*, 549 F.3d 1381, 1385 (Fed. Cir. 2008). "District courts have tended to award attorney fees when willful infringement has been proven, and [the Federal Circuit] has uniformly upheld such awards." *S.C. Johnson*, 781 F.2d at 200. The jury's factual findings and the evidence underlying its willfulness determination should not be reweighed or second-guessed during a determination of whether attorney fees are warranted. *Jurgens v. CBK, Ltd.*, 80 F.3d 1556, 1572-73 (Fed. Cir. 1996).

As described in detail in PACT's Motion for Enhanced Damages, the verdict of willfulness demonstrates that the jury found that Xilinx knew of PACT's asserted patents, acted despite an objectively high risk that the patents were valid and that it was infringing, knew or should have known that its actions constituted an unjustifiably high risk of infringement, and failed to present any credible defenses. *See* Motion for Enhanced Damages at 3-11. These factual findings are sufficient to warrant a finding that the case is exceptional. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2-04-CV-32, 2007 WL 2329833, at *1 (E.D. Tex. Aug. 13, 2007) ("In general, when a jury finds willful infringement, there is support for a finding of an exceptional case. . . . There is no apparent reason for denying a fee award in this case, and the court therefore declares the case exceptional and awards attorneys' fees and costs."); *see also ACCO Brands, Inc. v. Am. Power Conversion Corp.*, No. 2:02-CV-113, 2004 WL 5698341, at *7 (E.D. Tex. Apr. 27, 2004). Additionally, Xilinx, the world's leading FPGA manufacturer and a company with significant financial resources, chose to disregard PACT's patent rights and wait

2

for PACT to go bankrupt (and promote the bankruptcy by refusing to partner with PACT and by discouraging at least one third party from investing in PACT) to acquire the patents below market value.  *See* Motion for Enhanced Damages at 1, 13-14.  Xilinx's attempt to evade liability for infringement by exploiting PACT's precarious financial position is precisely the type of conduct that makes it "grossly unfair for [PACT] to sustain the expense of counsel."  *See Power Lift, Inc. v. Lang Tools, Inc.*, 774 F.2d 478, 482 (Fed. Cir. 1985).

**B.      PACT's Attorney's Fee Request is Reasonable and Conservative**

PACT respectfully requests that the Court award $2,403,874.83 in attorney's fees, which reflects just 37.5% of the total attorney's fees incurred by PACT in this case.  PACT arrived at this figure using the lodestar method of identifying a reasonable number of hours (determined as described below) and multiplying it by a reasonable hourly rate for each member of PACT's legal team.  *See O2*, 2007 WL 2329833, at *2.  A detailed explanation of the basis for these fees, including the hours for which fees are sought, a description of the staffing of this case by PACT's counsel at Susman Godfrey LLP and Heim, Payne & Chorush, LLP, and the respective hourly rates of each individual, is set forth in the attached declarations of Joseph Grinstein and Russell Chorush.

The requested hourly rates are reasonable in light of the average hourly rates for partners and associates in Texas reported in the 2011 AIPLA Report of the Economic Survey.  Ex. A; *see also ReedHycalog UK, Ltd. v. Diamond Innovations Inc.*, No. 6:08-CV-325, 2010 WL 3238312, at *8 (E.D. Tex. Aug. 12, 2010) (citing the 2009 AIPLA Report of the Economic Survey for rates of $590/hr and $385/hr for partners and associates, respectively, in Texas law firms).

PACT determined the number of reimbursable hours based on an extremely conservative estimate of the amount of time directly attributable to the issues that were presented at trial and

3

decided by the jury.  A brief overview of the history of the case provides the background for this request.  When PACT originally filed suit on December 28, 2007, it asserted that Defendants were infringing eight of PACT's patents.  Dkt. No. 1.  On February 16, 2009, PACT filed an amended complaint in which it asserted three additional patents, bringing the total number to 11. Dkt. No. 57.  These 11 patents can be grouped by subject matter into two families—(1) the "Bus Interface" family, containing three of the originally asserted patents and the two patents that were tried, and (2) the "Dynamic Reconfiguration" family, which contained the remaining eight patents.  Over the course of 4.5 years of litigation, the case was narrowed.  In May 2011, Defendants' filed a motion requesting that the Court order PACT to limit the number of asserted claims.  Dkt. No. 188.  In response, PACT volunteered to reduce the number of asserted claims within one week of the Court issuing its *Markman* order.  Dkt. No. 200, at 1.  On June 24, 2011, PACT followed through on its offer and reduced the number of asserted patents to seven (the three Bus Interface patents and four of the Dynamic Reconfiguration patents).  Dkt. No. 219.  On April 15, 2012, after PACT and Xilinx reached an agreement to further narrow the case, PACT informed Defendants that it would only assert the '181 and '106 patents (two of the three originally asserted Bus Interface patents) at trial.[1]  Ex. B.

Because of overlapping issues and combined time, it is not feasible to precisely determine from counsel's billing records which billed hours related directly to issues pertinent to the '181 and the '106 Patents.   Accordingly, PACT has divided the litigation into three phases for purposes of its fee request.  For each phase, PACT requests a percentage of the total fees accrued that is determined based on the proportion of patents asserted at trial compared to the total patents asserted during that phase:

---

[1] The third Bus Interface patent, U.S. Patent No. 6,513,077, contains claims that are very similar to the claims that were asserted from the '181 and '106 patents.

| Phase (Dates) | Patents at Issue | Percentage of Total Fees Requested |
|---|---|---|
| Phase I (12/28/2007 – 6/24/2011) | 11 | 18.2% (2/11) |
| Phase II (6/25/2011 – 4/15/2012) | 7 | 28.6% (2/7) |
| Phase III (4/16/2012 – 5/31/2012) | 2 | 100% (2/2) |

Applied to counsel's billing records, PACT derives its requested fees as follows:

| Phase | Total Fees Accrued | Discount Multiplier | Total Fees Requested |
|---|---|---|---|
| Phase I | $3,584,004.75 | 18.2% (2/11) | $651,637.23 |
| Phase II | $1,503,298.50 | 28.6% (2/7) | $429,513.86 |
| Phase III | $1,322,723.75 | 100% (2/2) | $1,322,723.76 |

**Total**:  $2,403,874.83

PACT's fee request is conservative for multiple reasons.  First, PACT could reasonably seek its full fees because the infringement theories and relevant features of the accused FPGAs were generally the same for all of the patents.  Indeed, even after PACT narrowed the case to the Bus Interface Patents, dynamic reconfiguration remained an issue in the case because claim 17 of the '181 Patent recites "a plurality of re-programmable, dynamically reconfigurable cells."  The accused functionality meeting this limitation—namely, the DSP48—was also the centerpiece of PACT's infringement theories under the Dynamic Reconfiguration Patents.  Accordingly, much of the time spent gathering and analyzing proof of infringement of the eight Dynamic Reconfiguration Patents was in any event necessary for purposes of PACT's trial presentation as to claim 17.  But PACT is only seeking $2,403,874.83, which represents just 37.5% of its full fees.

Second, even after opting not to seek fees for the Dynamic Reconfiguration Patents, PACT could reasonably seek 50% of its fees for the phases of the litigation where both families were at issue and 100% of its fees thereafter.  Although three of the originally asserted patents were Bus Interface Patents and eight of the originally asserted patents were Dynamic Reconfiguration Patents, substantial overlap existed between the claims of the different Bus

5

Interface Patents and likewise substantial overlap existed between the claims of the different Dynamic Reconfiguration Patents.  Even ignoring claim 17 of the '181 Patent and assuming PACT's time was split 50-50 between the Bus Interface Patents and Dynamic Reconfiguration Patents until PACT narrowed to the Bus Interface Patents on April 15, 2012, PACT could reasonably seek $3,866,375.38 in fees.  PACT's request for $2,403,874.83 reflects just 62.2% of this amount.

Third, PACT has also deducted a pro rata share of its fees to take into account that it did not take the third Bus Interface patent to trial.  But because the asserted claims in this patent had very similar limitations and scope to the claims in the '106 and '181 patents, the additional work required by including it in the earlier stages certainly did not account for 1/11 or 1/7 of the total time PACT devoted to the case in phases I and II, respectively.   PACT nevertheless has discounted its fees by those amounts.

Fourth, the Bus Interface Patents accounted for about 75% of PACT's total damages model set forth in Dr. Nawrocki's expert report, which addressed both the Bus Interface and Dynamic Reconfiguration families.  Ex. C.  It is reasonable to estimate that the amount of resources and attention devoted to each patent family would track its relative value.  Applying a 75-25 weighting to the Bus Interface and Dynamic Reconfiguration Patents, PACT could reasonably seek $5,138,201.19 in fees.  Yet although the '181 Patent and '106 Patent account for 75% of the damages model,[2] PACT is only seeking 46.8% of what the reduced fee would be if a 75% weighting factor was applied to the phases where both families of patents were asserted.

---

[2] Because the claims in the third Bus Interface patent, the '077 patent, had scopes similar to the asserted claims in the '181 and '106 patents, dropping those claims did not affect PACT's damages model.

6

Fifth, Xilinx asserted numerous defenses in this case that were applicable regardless of the number and identity of the patents asserted by PACT—*e.g.*, Xilinx's marking defense, its laches defense, its unclean hands defense, *etc*.  Accordingly, it could be argued that some percentage of PACT's time in the case was spent on these universal defenses—say, for example, 10%—and so the deduction for dropped patents ought to apply only to the remaining 90% of PACT's time.  PACT has not proposed such a calculation, however.

Sixth, PACT has not requested attorney's fees for any of the time spent on this case by its local counsel.

For the foregoing reasons, PACT's request for fees is more than reasonable.  In an effort to avoid charging Xilinx for time spent on PACT's dropped patents, PACT has almost certainly undervalued the time it actually spent on the patents that went to trial.

### III. CONCLUSION

For the reasons stated above, PACT respectfully requests that the Court award PACT $2,403,874.83 in attorney fees.

DATED:  June 25, 2012

Respectfully submitted,

By:  Robert Christopher Bunt
State Bar No. 00787165
rcbunt@pbatyler.com
Robert M. Parker
State Bar No. 15498000
rmparker@pbatyler.com
Charles Ainsworth
State Bar No. 00783521
tgorham@pbatyler.com
PARKER, BUNT & AINSWORTH
100 E. Ferguson, Suite 1114
Tyler, TX 75702
903-531-3535
Fax: 903-533-9687

/s/ Joseph S. Grinstein (by permission NJD)
Joseph S. Grinstein
State Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
**Lead Attorney for Plaintiff**

OF COUNSEL:

Russell A. Chorush
State Bar No. 24031948
Email:  rchorush@hpcllp.com
Eric Enger
State Bar No. 24045833
Email:  eenger@hpcllp.com
Nathan Davis
State Bar No. 24065122
Email:  ndavis@hpcllp.com
HEIM, PAYNE & CHORUSH, LLP
600 Travis Street, Suite 6710
Houston, Texas 77002
Telephone:  (713) 221-2000
Facsimile:  (713) 221-2021

Otis W. Carroll
State Bar No. 03895700
Email:  nancy@icklaw.com
Collin M. Maloney
State Bar No. 00794219
Email:  cmaloney@icklaw.com
IRELAND CARROLL AND KELLEY, P.C.
6101 South Broadway, Suite 500
P.O. Box 7879
Tyler, Texas 75711
Telephone:  (903) 561-1600
Facsimile:  (903) 561-1071

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is filed under seal pursuant to

Paragraph 8 of the Court's Agreed Protective Order.

/s/ Nathan J. Davis

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via email on June

27, 2012.

/s/ Nathan J. Davis

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for PACT XPP Technologies, AG has complied

with the meet and confer requirement in Local Rule CV-7(h).  On June 27, 2012, John Lahad of

Susman Godfrey LLP and Nathan Davis of Heim Payne & Chorush LLP, counsel for PACT XPP

Technologies, AG, conferred with Jeremy Taylor, counsel for Defendants Xilinx, Inc. and Avnet,

Inc., by teleconference regarding the foregoing Motion.  The parties were unable to reach an

agreement regarding the issues addressed in the Motion and thus Defendants oppose the motion.

/s/ Nathan J. Davis