IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| PACT XPP TECHNOLOGIES, AG | § | |
| | § | |
| Plaintiff, | § | C.A. No. 2-07cv563 RSP |
| | § | |
| vs. | § | |
| | § | FILED UNDER SEAL |
| XILINX, INC. & AVNET, INC., et al. | § | |
| | § | |
| Defendant. | § | |

## PACT XPP TECHNOLOGIES, AG'S MOTION FOR ENHANCED DAMAGES

#13362/1029.0010

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................. 1

II.   LEGAL STANDARDS ..................................................................................... 2

III.  ARGUMENT ................................................................................................... 3

   A.   Xilinx's Infringement Was Willful ..................................................... 3

   B.   The Read Factors Strongly Favor Enhancement ........................................ 5

      i.   Whether the infringer deliberately copied the ideas of another ................................... 5

      ii.   Whether the infringer investigated the scope of the patent and formed a good faith belief that it was invalid or not infringed .................................................. 5

      iii.  The infringer's behavior as a party to the litigation ...................................... 7

      iv.  The defendant's size and financial condition .......................................... 7

      v.   The closeness of the case ................................................................... 8

      vi.  The duration of the defendant's misconduct ...................................... 11

      vii.  Remedial action by the defendant ...................................................... 12

      viii. The defendant's motivation for willfully infringing ................................... 12

      ix.  Whether the defendant attempted to conceal its misconduct ...................................... 14

   C.   Enhancing The Jury Award By Two to Three Times is Reasonable ..................... 15

IV.  CONCLUSION .............................................................................................. 15

## **TABLE OF AUTHORITIES**

**Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121 (Fed. Cir. 2011) ........................... 4

*ACCO Brands, Inc. v. Am. Power Conversion Corp.*, 2004 WL 5698341 (E.D. Tex. Apr. 27, 2004) ................................................................................................................................ 7, 15, 18

*Affinity Labs of Texas, LLC v. BWM N. Am., LLC*, 783 F. Supp. 2d 891 (E.D. Tex. 2011).......... 9

*Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324 (Fed. Cir. 2012) ........................................ 4

*Bard Peripheral Vascular, Inc. v. W.L Gore & Assocs., Inc.*, --- F.3d ----, 2012 WL 2149495 .... 4

*Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629 (Fed. Cir. 2011)...................................... 14

*CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225 (Fed. Cir. 2005).................................... 10

*Creative Internet Advertising Corp. v. Yahoo! Inc.*, 689 F. Supp. 2d 858 (E.D. Tex. 2010) ("*CIAC*") ................................................................................................................ 7, 9, 14, 15

*DataTreasury Corp. v. Wells Fargo & Co.*, 2010 WL 5140718 (E.D. Tex. Sept. 27, 2010)... 9, 18

*Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108 (Fed. Cir. 2002) ........................ 12

*Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) .................................. 12

*Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314 (Fed. Cir. 2003).................................. 5

*Hoechst Celanese Corp. v. BP Chems. Ltd.*, 846 F. Supp. 542 (S.D. Tex. 1994) ..................... 8, 9

*In re Aoyama*, 656 F.3d 1293 (Fed. Cir. 2011)............................................................................... 4

*In re Seagate*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc) ............................................................. 7

*Jurgens v. CBK, Ltd.*, 80 F.3d 1566 (Fed. Cir. 1996) ............................................................... 2, 3

*Microtune (Texas), L.P. v. Broadcom Corp.*, 2003 WL 23326002, at *2 (E.D. Tex. Aug. 12, 2003) ....................................................................................................................... 7, 15, 18

*Predicate Logic, Inc. v. Distrib. Software, Inc.*, 544 F.3d 1298 (Fed. Cir. 2008) ....................... 11

*QPSX Devs. 5 Pty Ltd. v. Nortel Networks, Inc.*, 2008 WL 728201, at *2 (E.D. Tex. Mar. 18, 2008) ............................................................................................................................... 3, 14

ii

*Read v. Portec,* 970 F.2d 816 (Fed. Cir. 1992) .......................................................................... 3, 6

*ReedHycalog UK, Ltd. v. Diamond Innovations Inc.*, 2010 WL 3238312 (E.D. Tex. Aug. 12, 2010) ........................................................................................................................... 13, 15, 18

*Sitrick v. Dreamworks, LLC*, 516 F.3d 993 (Fed. Cir. 2008)........................................................ 13

*Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336 (Fed. Cir. 2011)............................................. 7

*SRI Int'l, Inc. v. Adv. Tech. Labs., Inc.*, 127 F.3d 1462 (Fed. Cir. 1997) ...................................... 3

*St. Regis Paper Co. v. Winchester Carton Corp.*, 410 F. Supp. 1304 (D. Mass. 1976) .............. 18

*Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357 (Fed. Cir. 2002) .. 11

*Yodlee, Inc. v. CashEdge, Inc.*, 2006 WL 3456610 (N.D. Cal. Nov. 29, 2006) ........................... 12

*z4 Techs., Inc. v. Microsoft Corp.*, 2006 WL 2401099 (E.D. Tex. Aug. 18, 2006)............ 8, 14, 17

**Statutes**

35 U.S.C. § 284...................................................................................................................... 1, 2

# I.  INTRODUCTION

The jury found that Xilinx, Inc.[1] willfully infringed PACT's '181 and '106 patents ("PACT's Bus Interface Patents") through its manufacture, use, and/or sale of certain Virtex-branded field-programmable gate arrays ("FPGAs").  Pursuant to 35 U.S.C. § 284, a finding of willfulness entitles PACT to seek enhanced damages from this Court.  Accordingly, PACT respectfully requests that the Court double or triple the jury's damage award.

The record developed at trial more than supports such an enhancement of damages. During trial, PACT proved that: (1) Xilinx knew about PACT's Bus Interface Patents no later than March 15, 2003; (2) Xilinx knew that it needed these patents for its "coarse-grained" products; (3) the bus interface features accused by PACT, and found to be infringing by the jury, were coarse-grained; but (4) rather than license PACT's patents at fair value, Xilinx schemed to acquire PACT's patents on the cheap after PACT was driven into bankruptcy.  *See* PX98, PX112, PX114, PX118, PX119, PX201.[2]  This is a classic case of the type of willfulness that damages enhancement is designed to remedy.

Xilinx may defend itself from enhancement by arguing it presented colorable defenses at trial.  The record reflects the opposite, however.  As to infringement, Xilinx's defense in essence challenged only the "interface unit" limitation in the asserted claims.[3]  But Xilinx's challenge to that claim limitation rested entirely upon improper claim construction positions, including arguing that (1) "permanent" means non-programmable; and (2) "a bus system control" means all bus system controls for at least one complete bus protocol.  As to invalidity, Xilinx's defense

---

[1] PACT sought and obtained a willfulness finding only as to Defendant Xilinx.

[2] For the Court's convenience, PACT has attached as Exhibits A and B, respectively, all trial exhibits and testimony cited herein.

[3] Xilinx's expert, Mr. McAlexander, admitted that he was only challenging the "interface unit" and "dynamically reconfigurable cells" limitations.  But the latter was only recited in claim 17 of the '181 patent, and accordingly was not relevant to infringement of the other four asserted claims.

amounted to brief testimony during which its expert, Mr. McAlexander, parroted to the jury the very invalidity theory that the Patent Office rejected in the reexamination proceedings initiated by Xilinx.  As explained below, Mr. McAlexander's trial testimony on validity was not only conclusory, but also fatally deficient.  In short, despite documentary evidence establishing that Xilinx knew of PACT's "strong portfolio" of patents (PX98) since at least 2003, Xilinx offered the jury no evidence—*e.g.*, an opinion of counsel—that it had developed a good faith belief in non-infringement or invalidity.  And the trial evidence confirmed not only that no good faith basis exists, but also that Xilinx introduced new infringing products even after it was sued.

PACT therefore asks this Court to enhance damages based on the jury's finding of willfulness and to use its discretion in determining whether to double or triple PACT's damages.

## II.  LEGAL STANDARDS

Once damages have been awarded for infringement, "the court may increase the damages up to three times the amount found or assessed."  35 U.S.C. § 284 (emphasis added).  The Federal Circuit has adopted a two-step process for determining whether damages should be enhanced.  *See Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1570 (Fed. Cir. 1996).  First, "the fact-finder must determine whether an infringer is guilty of conduct upon which increased damages may be based."  *Id.*  "An act of willful infringement satisfies this culpability requirement and is, without doubt, sufficient to meet the first requirement to increase a compensatory damages award."  *Id.*

Second, once sufficiently culpable conduct is found, "the court then determines, exercising its sound discretion, whether, and to what extent, to increase the damages award given the totality of the circumstances."  *Id.*  In cases involving willful infringement, the Federal Circuit presumes the trial court will enhance damages and accordingly requires that the trial court "provide reasons for not increasing a damages award . . . ."  *Id.* at 1572.

2

"When willful infringement or bad faith has been found, the remedy of enhancement of damages not only serves its primary punitive/deterrent role, but in so doing it has the secondary benefit of quantifying the equities as between patentee and infringer."   *SRI Int'l, Inc. v. Adv. Tech. Labs., Inc.*, 127 F.3d 1462, 1468 (Fed. Cir. 1997).   In *Read v. Portec*, the Federal Circuit identified nine factors that courts evaluate when considering enhancement: (1) whether the infringer deliberately copied the ideas of another; (2) whether the infringer investigated the scope of the patent and formed a good faith belief that it was invalid or not infringed; (3) the infringer's behavior as a party to the litigation; (4) the defendant's size and financial condition; (5) the closeness of the case; (6) the duration of the defendant's misconduct; (7) remedial action by the defendant; (8) the defendant's motivation for willfully infringing; and (9) whether the defendant attempted to conceal its misconduct.   *Read v. Portec,* 970 F.2d 816, 826-27 (Fed. Cir. 1992). The trial court has discretion to balance these factors to determine a just remedy and may enhance the damages substantially even if fewer than all of the factors favor enhancement.   *See QPSX Devs. 5 Pty Ltd. v. Nortel Networks, Inc.*, 2008 WL 728201, at *2 (E.D. Tex. Mar. 18, 2008) (enhancing damages by a factor of 1.7 based on just three *Read* factors).

## III. ARGUMENT

### A.   Xilinx's Infringement Was Willful

The jury found by clear and convincing evidence that Xilinx's infringement was willful. Dkt. No. 370, at 2.  This decision was rendered pursuant to a jury instruction requiring PACT to prove that "Xilinx acted despite a high likelihood that Xilinx's actions infringed a valid and enforceable patent" and explaining that "[l]egitimate or credible defenses to . . . infringement, even if not ultimately successful, demonstrate a lack of recklessness."  5/18/12 Morning TT, at 25:3-18.  Importantly, the key defenses decided by the jury that are relevant to willfulness—

3

infringement and anticipation—are questions of fact.  *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1129-30 (Fed. Cir. 2011); *In re Aoyama*, 656 F.3d 1293, 1296 (Fed. Cir. 2011).  Defendants' other relevant trial defense, obviousness, "is a question of law based on underlying findings of fact."  *Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1332 (Fed. Cir. 2012).  And Defendants did not object to submitting obviousness to the jury.

On June 14, 2011, a three-judge Federal Circuit panel held that "the threshold objective prong of the willfulness standard enunciated in *Seagate* is a question of law based on underlying mixed questions of law and fact and is subject to *de novo* review."  *Bard Peripheral Vascular, Inc. v. W.L Gore & Assocs., Inc.*, --- F.3d ----, 2012 WL 2149495, at *1.  The *Bard Peripheral* panel further explained that "the ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided as a matter of law by the judge."  *Id.* at *4.  Under *Bard*, the district court must "determine, based on the record ultimately made in the infringement proceedings, whether a reasonable litigant could realistically expect those defenses to succeed.  If, in view of the facts, the asserted defenses were not reasonable, only then can the jury's subjective willfulness finding be reviewed for substantial evidence."  *Id.*

The Court should find as a matter of law that, based on the record ultimately made at trial, Defendants could not realistically expect their defenses to succeed.  Specifically, the jury found not only (1) that the fact issues of infringement and anticipation and the facts issues underlying the obviousness inquiry favored PACT, but also (2) that Defendants' positions on these factual issues were not "legitimate or credible."[4]  *See Hewlett-Packard Co. v. Mustek Sys., Inc.*, 340 F.3d 1314, 1325 (Fed. Cir. 2003) (the jury's presumed factual findings should not be disturbed in cases where questions of law are submitted to the jury).  And, as set forth below the trial evidence compels the conclusion that Defendants' defenses were not, as a matter of law, reasonable or credible.

---

[4] Defendants have also waived any argument that the jury, rather than the Court, was the proper arbiter of willfulness by agreeing to submit the issue to the jury.

**B.      The *Read* Factors Strongly Favor Enhancement**

In finding willfulness, the jury necessarily found that Xilinx knew of PACT's Bus Interface Patents, acted despite an objectively high likelihood that the patents were valid and that it was infringing, and actually knew or should have known that its actions constituted an unjustifiably high risk of infringing a valid patent.  *See* 5/18/12 Morning TT, at 25:3-18 (jury charge).  It also found that Xilinx's defenses were not legitimate or credible.  *Id.* at 25:7-10.[5]

As discussed in detail below, seven of the nine *Read* factors favor a substantial enhancement of the jury's damages award.  Such an enhancement will not only balance the equities, but will also properly deter Xilinx from such willful infringement in the future.

      i.      *Whether the infringer deliberately copied the ideas of another*

PACT has not alleged that Xilinx deliberately copied its bus interface inventions.

      ii.     *Whether the infringer investigated the scope of the patent and formed a good faith belief that it was invalid or not infringed*

Although the evidence shows that Xilinx has known about PACT's patents since September 2002 (PX94, at 2)—and specifically the '181 and '106 Patents and their value since no later than March 15, 2003 (PX98)—Xilinx did not present <u>any</u> evidence that it had formulated a good faith belief that it was not infringing or the patents were invalid.  To the contrary, Xilinx's internal emails show that it understood the importance of PACT's patents.  *See* PX98 ("**Seems like a strong portfolio**"); PX201 (". . . I would engage because of the patent portfolio . . ."); PX114 ("According to Ivo they may have some interesting patents and IP . . ."); PX112 (". . . I would be interested in their patents.").  The evidence also showed that the accused features of Xilinx's FPGAs are "coarse grained" (5/15/12 Morning TT, at 34:11-13) and that Xilinx expressly recognized that PACT's patents were particularly important to coarse-grained

---

[5] PACT expects that contemporaneously with this filing, Defendants will move for Judgment as a Matter of Law.  PACT incorporates herein its forthcoming briefing on any such JMOL motion.

architectures.  PX112 ("If you believe that coarse grain arrays will prevail in the future, they [PACT] have a strong patent portfolio . . . .").  As the jury rightly found, it is not credible for Xilinx to suggest that it was so interested in patents that it believed were invalid or not infringed.  *See Spectralytics, Inc. v. Cordis Corp.*, 649 F.3d 1336, 1348 (Fed. Cir. 2011) ("[A]fter willful infringement is found, it is inappropriate to discount evidence relating to whether there was adequate investigation of adverse patent rights.").

The fact that an infringer had knowledge of the patented inventions and failed to investigate or attempt to avoid infringement weighs strongly in favor of enhancement.[6]  *See Creative Internet Advertising Corp. v. Yahoo! Inc.*, 689 F. Supp. 2d 858, 866 (E.D. Tex. 2010) ("*CIAC*") ("[T]he Court finds that Yahoo's failure to seek the advice of outside counsel [is] particularly concerning."); *ACCO Brands, Inc. v. Am. Power Conversion Corp.*, 2004 WL 5698341, at *4-5 (E.D. Tex. Apr. 27, 2004) ("carefree attitude towards infringement" demonstrated by failure to investigate after gaining knowledge of the patent "weighs strongly in favor of enhanced damages"); *Microtune (Texas), L.P. v. Broadcom Corp.*, 2003 WL 23326002, at *2 (E.D. Tex. Aug. 12, 2003) (noting that plaintiff's willfulness case was "strong and convincing" where defendant was "exposed to [the plaintiff's] technology" and notified of the patent in writing but did not investigate) (vacated by joint motion of the parties after settlement). Here, Xilinx not only continued to infringe following the filing of this suit in 2007, but also introduced new infringing FPGAs—the Virtex-6 in 2009—in derogation of PACT's patent rights.  *See* 5/16/12 Morning TT, at 105:25-106:3.

---

[6] Although a defendant's failure to obtain an opinion of counsel cannot be relied upon to prove willfulness, *In re Seagate*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (en banc), it is proper to take into account "the failure to obtain an opinion of counsel or otherwise investigate the patent" when determining enhanced damages, *Spectralytics*, 649 F.3d at 1348.

The only evidence that Xilinx presented reflecting its subjective beliefs were the defenses it asserted at trial.  But the jury found that these defenses were not credible and, as discussed in more detail below, Xilinx did not present a close case of non-infringement or invalidity on the merits.  In any event, "defenses of litigation counsel are not strong evidence of due care."  *z4 Techs., Inc. v. Microsoft Corp.*, 2006 WL 2401099, at \*26 (E.D. Tex. Aug. 18, 2006).  As such, Xilinx presented no testimony that it ever formed a pre-suit belief that PACT's patents were non-infringed or invalid.

### iii.  The infringer's behavior as a party to the litigation

For purposes of this motion, PACT does not accuse Defendants of litigation misconduct. Although this factor therefore does not warrant further enhancement, it also does not preclude an otherwise appropriate award of enhanced damages.  *See Hoechst Celanese Corp. v. BP Chems. Ltd.*, 846 F. Supp. 542, 548-49 (S.D. Tex. 1994).

### iv.  The defendant's size and financial condition

Xilinx's financial condition and position as the world's largest FPGA company merits a large enhancement, particularly given the massive profits it derived from infringing sales.  Over the course of the infringement, Xilinx has earned $1.461 billion in revenue from sales of the infringing FPGAs.  Nawrocki Decl., at ¶ 4.[7]   The average profit margin on these sales was approximately 25.5%, which yields a total profit of $372.6 million.  *Id.* at ¶¶ 5-6.  And, these infringing products are Xilinx's flagship products, ensuring Xilinx's ability to maintain its FPGA market share.  Viewing the company as a whole, Xilinx has nearly $800 million cash and cash equivalents on hand as well as over $1.1 billion in short-term investments.  *Id.*. at ¶ 7.

---

[7] This information about Xilinx's overall revenues and profits was not introduced at trial because Xilinx excluded it via its *limine* motions to avoid a verdict influenced by "large numbers."   The absence of this evidence at trial, however, has no impact on this Court's ability to consider it now for purposes of the *Read* factors.

A large enhancement is necessary for deterrence when the infringing products are highly profitable and the defendant has significant resources. *DataTreasury Corp. v. Wells Fargo & Co.*, 2010 WL 5140718, at *4 (E.D. Tex. Sept. 27, 2010); *Affinity Labs of Texas, LLC v. BWM N. Am., LLC*, 783 F. Supp. 2d 891, 903 (E.D. Tex. 2011).  A significant enhancement is particularly appropriate in the present case because Xilinx's financial resources dwarf those of PACT.  *See CIAC*, 689 F. Supp. 2d at 866 ("Review of [] Yahoo's profit margins during the period of infringement, <u>especially relative to that of Plaintiff</u>, sustains a finding of enhanced damages for willful infringement by the accused product." (emphasis added)).

   *v.  The closeness of the case*

Xilinx's defenses did not create a close case on the merits.  By finding willfulness, the jury concluded that, as a factual matter, Xilinx's defenses were not credible.  *See* 5/18/12 Morning TT, at 25:7-10 (jury charge).  PACT requests that the Court respect the jury's factual findings and issue a determination that Xilinx's infringement was objectively reckless.

With the exception of claim 17 of the '181 patent, Xilinx focused its entire non-infringement case on just one limitation—"interface unit"/"interface."[8]  *See* 5/17/12 Morning TT, at 62:16-23.  But Xilinx's defense was nothing more than an attempt to redefine the Court's claim constructions and confuse the jury with an incorrect rule of law about infringement of apparatus claims.  Xilinx's focus on redefining "interface unit" and "interface" is particularly striking because the construction of those terms was <u>agreed to</u> by Xilinx during the *Markman* process.  *See* Dkt. No. 201, at 20.  Specifically, Xilinx agreed that "interface unit" or "interface" means "unit providing <u>permanent</u> implementation of <u>a</u> bus system control for communicating

---

[8] Defendants also presented an unpersuasive argument relating to "dynamically reconfigurable cells," which, for purposes of brevity, PACT will not address in this brief.  Because this limitation is only in claim 17 of the '181 patent, it cannot make the infringement case close for the remaining four asserted claims.  *See CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1236 (Fed. Cir. 2005) ("[I]nfringement of even a single claim entitles a patentee to damages.").

information across a shared boundary." *Id.* (emphases added).  At trial, PACT's expert testified that the infringing FPGAs provide a permanent implementation of several bus system controls— *i.e.*, a serializer, deserializer, and flow control.  Xilinx never argued that these bus system controls were absent from their FPGAs and admitted that they were provided in hardwired circuitry rather than configured from CLBs.  *See, e.g.*, 5/16/12 Afternoon TT, at 7:7-22.

Instead, and contrary to the Court's claim construction, Xilinx's primary non-infringement position was that Xilinx's products were "programmable" and the meaning of "permanent" somehow precludes any programmability.  *See* 5/16/12 Afternoon TT, at 120:24-25.  Not only did Xilinx waive this argument by failing to raise it during claim construction, Xilinx's redefinition of "permanent" is inconsistent with the specification and violates the doctrine of claim differentiation.  *See* '181 Patent, at Fig. 9a; the discussion of input and output cells in column 3; and claim 30 (". . . the at least one interface unit being configured . . .").

Xilinx's second non-infringement position was that the "interface unit"/"interface" must have a permanent implementation of <u>all</u> bus system controls for at least one complete bus protocol.  *See* 5/17/12 Morning TT, at 14:22-16:15.  But the claim construction—which Xilinx agreed to—only requires "permanent implementation of <u>a</u> bus system control for communicating information across a shared boundary."  Dkt. No. 201, at 20 (emphasis added).  Xilinx's position disregards the black-letter law that "a" means "one or more"—not "all"—and that infringement of claims using the transition word "comprising" cannot be negated by adding additional components (*e.g.*, some non-permanent bus system controls in addition to the permanent ones). *See Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1370 (Fed. Cir. 2002); *Predicate Logic, Inc. v. Distrib. Software, Inc.*, 544 F.3d 1298, 1304 (Fed. Cir. 2008).[9]

---

[9] Indeed, in *CIAC*, the court found that a non-infringement position that did "not comport with established precedent" concerning the meaning of "a" or "an" as "one or more" "not only contradicts [the

The final non-infringement position pressed by Xilinx was that the accused FPGAs do not infringe because the claims require "providing communication" and "[t]he RocketIO does not work; none of the I/O works until it is programmed. So it cannot provide communications. It's incapable of doing it." 5/17/12 Morning TT, at 8:8-9:18. This argument was meritless for multiple reasons. First, the claim does not require that the "interface unit" provide communication. Rather, the claim requires "the first plurality of individual lines providing communication via the at least one interface unit." Second, Mr. McAlexander ignored that the plain meaning of "provide" only requires capability: specifically, "provide" means "make available." Ex. C. And Mr. McAlexander never disputed that the individual lines make available communication. Third, apparatus claims that recite functionality are infringed simply by devices that are "reasonably capable" of performing the claimed function. *See* 5/18/12 Morning TT, at 17:4-7 (jury charge); *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010); *Fantasy Sports Props. v. Sportsline.com, Inc.*, 287 F.3d 1108, 1118 (Fed. Cir. 2002); *Yodlee, Inc. v. CashEdge, Inc.*, 2006 WL 3456610, at *4 (N.D. Cal. Nov. 29, 2006) ("The claims simply use active language to describe the *capability* of the apparatuses; they do not claim the activity itself.").

Turning to invalidity, Xilinx thought so little of these defenses that it never even mentioned them at *voir dire* or during its opening statement. And the entirety of Xilinx's invalidity case—that the DeHon '773 patent allegedly invalidates PACT's patents—occupies fewer than 12 pages of the trial transcript. 5/17/12 Morning TT, at 38:23-49:3 (McAlexander direct). Xilinx's invalidity expert, Mr. McAlexander, admitted on cross examination that he failed to explain the application of (or, in many cases, even mention) large portions of the claim

---

defendant's] arguments of good faith, but also weighs in favor of enhanced damages." *CIAC*, 689 F. Supp. 2d at 868.

language and constructions.  *Id.* at 96:17-99:11; 104:16-105:3.  Conclusory testimony such as that offered by Xilinx on invalidity not only cannot create a "close case"—it cannot even raise a genuine issue of material fact.  *See Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008).  This is particularly true where invalidity must be proved by clear and convincing evidence and the DeHon '773 patent was considered by the Patent Office during the original prosecution of the '106 patent, and then again in both reexaminations where Xilinx made the exact same arguments that Mr. McAlexander presented to the jury.  *See ReedHycalog UK, Ltd. v. Diamond Innovations Inc.*, 2010 WL 3238312, at *10 (E.D. Tex. Aug. 12, 2010) (concluding that it was "not a close case" where defendant's primary prior art reference had been considered by three different patent examiners).[10]

### vi. *The duration of the defendant's misconduct*

"[P]ost-*Seagate* courts have repeatedly held that the length of time a defendant infringes with notice of the asserted patent affects misconduct when analyzing enhanced damages."  *CIAC*, 689 F. Supp. 2d at 869.  Xilinx began infringing in March 2002 when it released the Virtex-II Pro.  PACT first mentioned its patents to Xilinx in September 2002.  PX94, at 2.  Xilinx specifically knew of the '181 patent and the '106 patent no later than March 15, 2003, and considered PACT's patent portfolio—including these two patents, which were expressly

---

[10]  In addition to the fatal brevity, Xilinx's invalidity case for claim 1 of the '181 patent was premised on the wrong legal standard for inherency.  Mr. McAlexander testified that the DeHon '773 patent does not expressly describe the use of the state machine recited in claim 1 of the '181 patent and that he was instead relying on the fact that it was inherent in the PCI Local Bus Specification.  5/17/12 Morning TT, at 41:6-42:2; 102:17-103:9.  According to the Court's construction, the claimed "state machine" must be "permanent" and "predefined."  5/18/12 Morning TT, at 20:20-23.  But Mr. McAlexander admitted that (a) state machines can be non-permanent and non-predefined; and (b) the PCI Local Bus Specification does not expressly teach the use of a "permanent" and "predefined" state machine.  5/17/12 Morning TT, at 106:11-107:8.  This testimony unequivocally forecloses a finding of inherency under the proper legal standard, *i.e.*, that "[i]nherency can be established when prior art necessarily functions in accordance with, or includes, the claimed limitations."  *Bettcher Indus., Inc. v. Bunzl USA, Inc.*, 661 F.3d 629, 639 (Fed. Cir. 2011).  In an attempt to gloss over the critical flaw in his inherency theory, Mr. McAlexander blatantly misstated the legal test.  *See* 5/17/12 Morning TT, at 105:22-106:6.  As will be explained in PACT's JMOL briefing, for this and other reasons Defendants' invalidity theory failed as a matter of law.

referenced—to be "strong."  PX98.  Nevertheless, Xilinx continued selling the Virtex II-Pro and subsequently launched the infringing Virtex-II Pro X, Virtex 4, Virtex 5, and Virtex 6.

Xilinx's willful infringement for over nine years before the jury verdict weighs heavily in favor of enhancement, particularly where Xilinx increased its infringement by introducing new infringing products rather than attempting to design around PACT's patents.  *See CIAC*, 689 F. Supp. 2d at 868-69 (nine years of infringement "weighs strongly in favor of an award of enhanced damages"); *QPSX*, 2008 WL 728201, at *2 ("[T]he duration of Nortel's infringement and the lack of any evidence that it attempted to avoid infringement weigh heavily in favor of enhanced damage[s]."); *z4 Techs.*, 2006 WL 2401099, at *26.  Additionally, Xilinx has continued to sell the infringing FPGAs after the jury verdict.  "[C]ontinued infringement before, during, and after suit provides an inference of misconduct."  *CIAC*, 689 F. Supp. 2d at 869.

### vii. Remedial action by the defendant

There is no evidence that Xilinx took any remedial action to avoid infringement at any time after it learned of PACT's patents or even after PACT filed suit, nor has Xilinx indicated that it will take remedial action in response to the jury verdict.  This factor favors enhancement. *See ReedHycalog*, 2010 WL 3238312, at *10; *CIAC*, 689 F. Supp. 2d at 869; *ACCO*, 2004 WL 5698341, at *5 ("carefree attitude" about selling the accused products even after being charged with infringement weighs in favor of enhanced damages); *Microtune*, 2003 WL 23326002, at *2 ("Broadcom's failure to take any remedial action throughout this case, notwithstanding Microtune's initiation of this action, is further grounds for increasing the damage award.").

### viii.   The defendant's motivation for willfully infringing

PACT employees met with 15-20 different Xilinx employees on approximately 10 occasions before this suit was filed.  5/14/12 Afternoon TT, at 5:12-18; 5/15/12 Morning TT, at

25:10-12.  At the meetings, PACT described its technology, including its bus interface technology, and provided an overview of its patent portfolio.  5/14/12 Afternoon TT, at 3:15-5:11, 6:19-9:17, 12:6-18, 12:25-14:12, 15:5-17:7; PX94.  During these discussions, Xilinx and PACT entered into a Non-Disclosure Agreement ("NDA") and PACT provided many confidential technical documents.  *Id.* at 13:23-16:24; 5/17/12 Afternoon TT, at 100:2-101:23; PX117.

Rather that partnering with PACT, Xilinx monitored PACT's precarious financial position with the goal of purchasing the patents (which, as discussed above, Xilinx knew were valuable) at a low price if PACT went out of business.  *See* PX119 (meeting notes concerning PACT: "On the verge of going out of business.  We may want to buy their patents or have someone else buy them."); PX118; 5/17/12 Afternoon TT, at 63:21-69:2, 71:3-13, 73:11-81:17, 88:25-90:16.  Indeed, Xilinx contributed to PACT's anticipated bankruptcy by refusing to partner with it and encouraging at least one other company to do the same.  *See* 5/17/12 Afternoon TT, at 76:24-78:19, 86:15-19; PX112; PX517.

Yet even after Xilinx made an internal decision in March 2005 to forgo partnering with PACT, it continued to collect PACT's confidential information for another year.  5/17/12 Afternoon TT, at 83:12-86:7, 102:22-109:2.  After Xilinx finally told PACT that there was not going to be a business deal, PACT requested that Xilinx destroy or return PACT's confidential information pursuant to the NDA.  *Id.* at 109:3-110:6; PX54.  But instead Xilinx kept all of PACT's confidential information.  *Id.* at 110:7-111:21.  Internal emails show that Xilinx made little effort to comply its NDA obligations and Ivo Bolsens, Xilinx's Chief Technology Officer, admitted that Xilinx had breached the NDA.  *Id.* at 112:10-114:16, 116:8-16.

13

Xilinx's actions demonstrate that although it knew PACT's patents were valuable, it viewed PACT as a small, struggling company that need not be taken seriously.  Rather than concerning itself with its infringement or NDA obligations, Xilinx simply chose to wait for PACT to run out of money so it could buy the patents at a discount.  Enhanced damages are appropriate where a large infringer is motivated to willfully infringe by its belief that it does not need to worry about a smaller competitor or its patent rights.  *See z4*, 2006 WL 2401099, at *26.

ix. *Whether the defendant attempted to conceal its misconduct*

FPGAs can use "coarse grained" or "fine grained" configurable elements.  5/14/12 Afternoon TT, at 116:2-12.  Fine grained elements are smaller and simpler than coarse grained elements, which, in contrast, perform more complex functions.  *Id.*  PACT's patented bus interface technology relates to "coarse grained" FPGAs.  *Id.* at 116:16-18.

During its discussions with Xilinx, PACT mistakenly thought that Xilinx's products were fine grained and, accordingly, would benefit from the asserted patents.  *Id.* at 116:19-22; 143:17-21; 5/15/12 Morning TT, at 32:16-33:3.  PACT communicated its mistaken impression to Xilinx early in the discussions.  For example, in September 2003, Martin Vorbach told Dr. Bolsens in an email that he believed that "a combined device having XILINX's fine grained structure and PACT's coarse grained array could be positioned very successful at the market."  PX468.

Dr. Bolsens was aware of the value of PACT's patents when he received Mr. Vorbach's email.  On March 15, 2003, Dr. Bolsens received an email from a Xilinx employee that specifically called out PACT's '181 and '106 patents and noted that PACT's portfolio seemed "strong."  PX98.  A few days after receiving Mr. Vorbach's email, Dr. Bolsens received an email from Dan Gibbons summarizing his meeting with Mr. Vorbach and suggesting that Xilinx "engage" with PACT, in part, "because of the patent portfolio."  PX201.  A subsequent internal

14

email shows that Xilinx knew that PACT's patents were directed to coarse grained technology. PX112.  Notwithstanding the fact that Mr. Vorbach had expressly conveyed his misconception that Xilinx's technology was fine grained, Dr. Bolsens never pointed out that Xilinx's technology was actually coarse grained—not even when he responded to Mr. Vorbach's September 2003 email to explain why Xilinx did not intend to partner with PACT.  5/14/12 Afternoon TT, at 117:18-24; DX75; 5/17/12 Afternoon TT, at 17:22-20:4.  No one else at Xilinx ever corrected PACT's misunderstanding either.  5/15/12 Morning TT, at 33:22-25.  This amounts to intentional concealment by Xilinx of its infringement.

**C.      Enhancing The Jury Award By Two to Three Times is Reasonable**

Based on Xilinx's improper conduct towards PACT, an award of double to treble damages is appropriate.  *See, e.g.*, *ReedHycalog*, 2010 WL 3238312, at *10 (treble damages); *DataTreasury*, 2010 WL 5140718, at *5 (double damages); *ACCO*, 2004 WL 5698341, at *6 (double damages); *Microtune*, 2003 WL 23326002, at *3 (double damages).  Because Xilinx is, in the words of its counsel, "the leading FPGA-maker in the world today" (5/14/12 Morning TT, at 81:4-5), and PACT is a small start-up technology company that had its patent rights willfully violated, an award of treble damages is warranted.  *See St. Regis Paper Co. v. Winchester Carton Corp.*, 410 F. Supp. 1304, 1309 (D. Mass. 1976) ("This is an appropriate case to award double damages.  If defendant were the giant and plaintiff the small independent, I would make it treble . . . .").  PACT asks this Court to exercise its own judgment in determining whether this matter warrants a doubling or trebling of damages.

## IV. CONCLUSION

For the reasons stated above, PACT respectfully requests that the Court double or treble the jury's damages award.

15

DATED:  June 25, 2012

Respectfully submitted,

By:  Robert Christopher Bunt
    State Bar No. 00787165
    rcbunt@pbatyler.com
    Robert M. Parker
    State Bar No. 15498000
    rmparker@pbatyler.com
    Charles Ainsworth
    State Bar No. 00783521
    tgorham@pbatyler.com
    PARKER, BUNT & AINSWORTH
    100 E. Ferguson, Suite 1114
    Tyler, TX 75702
    903-531-3535
    Fax: 903-533-9687


/s/ Joseph S. Grinstein (by permission NJD)
Joseph S. Grinstein
State Bar No. 24002188
jgrinstein@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone:  (713) 651-9366
Facsimile:  (713) 654-6666
**Lead Attorney for Plaintiff**

OF COUNSEL:

Russell A. Chorush
State Bar No. 24031948
Email:  rchorush@hpcllp.com
Eric Enger
State Bar No. 24045833
Email:  eenger@hpcllp.com
Nathan Davis
State Bar No. 24065122
Email:  ndavis@hpcllp.com
HEIM, PAYNE & CHORUSH, LLP
600 Travis Street, Suite 6710
Houston, Texas 77002
Telephone:  (713) 221-2000
Facsimile:  (713) 221-2021

Otis W. Carroll
State Bar No. 03895700
Email:  nancy@icklaw.com
Collin M. Maloney

State Bar No. 00794219
Email:  cmaloney@icklaw.com
IRELAND CARROLL AND KELLEY, P.C.
6101 South Broadway, Suite 500
P.O. Box 7879
Tyler, Texas 75711
Telephone:  (903) 561-1600
Facsimile:  (903) 561-1071

## CERTIFICATE OF AUTHORITY TO FILE UNDER SEAL

The undersigned certifies that the foregoing document is filed under seal pursuant to Paragraph 8 of the Court's Agreed Protective Order.

/s/ Nathan J. Davis

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via email on June 27, 2012.

/s/ Nathan J. Davis

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel for PACT XPP Technologies, AG has complied with the meet and confer requirement in Local Rule CV-7(h).  On June 27, 2012, John Lahad of Susman Godfrey LLP and Nathan Davis of Heim Payne & Chorush LLP, counsel for PACT XPP Technologies, AG, conferred with Jeremy Taylor, counsel for Defendants Xilinx, Inc. and Avnet, Inc., by teleconference regarding the foregoing Motion.  The parties were unable to reach an agreement regarding the issues addressed in the Motion and thus Defendants oppose the motion.

/s/ Nathan J. Davis